## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        *Plaintiff,*

v.

                                Case No. 23-CR-10041-08-EFM

MARSHALL J. GREEN, JR.,

        *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Marshall J. Green, Jr.'s Renewed Motion for Acquittal Under Fed. R. Crim. P. 29, or in the Alternative, for a New Trial under Fed. R. Crim P. 33 (Doc. 387). Defendant was convicted at a jury trial of two Counts of drug conspiracy, three Counts of drug possession, and three Counts of firearm charges. At trial, Defendant moved for acquittal pursuant to Rule 29 arguing that the evidence was insufficient to support a conviction. The Court denied his motion. Plaintiff renews that Motion now; alternatively, he asserts that the interests of justice require a new trial. The Government opposes the Motion. For the reasons stated herein, the Court denies both of Defendant's motions.

### I.      Factual and Procedural Background

Defendant was charged as one of ten conspirators in a large methamphetamine and fentanyl distribution operation. On July 8, 2025, Defendant went to trial on the following charges contained in the Second Superseding Indictment:

**Count 1**: Conspiracy to Possess Fentanyl with the Intent to Distribute, in violation of 21 U.S.C. § 846;

**Count 2**: Conspiracy to Possess Methamphetamine with the Intent to Distribute, in violation of 21 U.S.C. 846;

**Count 27**: Possession of Fentanyl with the Intent to Distribute, in violation of 21 U.SC. § 841 and 18 U.S.C. § 2;

**Count 29**: Possession of Methamphetamine with the Intent to Distribute, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2;

**Count 30**: Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violations of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2;

**Count 31**: Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 2;

**Count 32**: Possession of Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 92(g)(1) and 18 U.S.C. § 2; and

**Count 34**: Possession of Fentanyl with the Intent to Distribute, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.

The Government presented evidence that, in April 2022, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") opened a drug investigation that focused on the distribution of fentanyl in Wichita, Kansas. During the investigation, ATF agents were able to make several undercover purchases of fentanyl tablets from several persons. Notably, these purchases included unique yellow fentanyl tablets which had not been previously seen in Wichita.

After further investigation, ATF agents identified the residence at 1214 W. Casado in Wichita as a place pertinent to the distribution of the drugs. After surveilling this residence, the ATF observed and identified several people who visited the residence: Calvin Williams Jr., Harold Hawkins, and Defendant. On one occasion, Defendant was observed entering the garage of the residence, closing the garage door, and remaining inside for several minutes. On another occasion, Defendant was observed entering the house of the residence and staying for several minutes. In all, Defendant was observed visiting the Casado residence five times over the course of two days. Defendant's visits to the Casado residence were observed just a few days before the ATF obtained

a search warrant for this residence and one other location pertinent to the investigation—1911 ½ S. Everett in Wichita.

These warrants were simultaneously executed on October 18, 2022. At both locations agents found a large quantity of contraband along with the unique yellow fentanyl pills. The Casado residence appeared to be the conspiracy's storage location while the Everett residence appeared to be the manufacturing and packaging location. At trial, the Government's case connecting Defendant to the conspiracy relied heavily upon fingerprint evidence. In all, the Government presented evidence that Defendant's fingerprints were located on 47 exhibits found at the two residences.

At the Casado residence, ATF agents found a large safe inside the garage. Inside that safe agents found over 70 pounds of methamphetamine, tens of thousands of fentanyl pills, and several firearms and magazines containing ammunition. The fentanyl pills were in dozens of baggies in various sizes; they appeared to be packaged for sale. The methamphetamine was in several large packages. There was also a black Gucci box containing several items commonly associated with drug packaging and distribution (scales, baggies, pill tray, etc.) in the safe. Defendant's fingerprints were found on many of the items in the safe: a drum magazine that was loaded with ammunition; multiple baggies containing fentanyl pills that appeared to be packaged for sale; multiple five-gallon buckets which contained bags filled with fentanyl pills ready for sale; and on the black Gucci box itself. Additionally, Defendant's fingerprints were located on several items within the black Gucci box, including on a box of baggies, on several individual baggies, and on a yellow pill tray.

At the Everett address, ATF agents found a sophisticated "pill lab" in a locked bedroom. The pill lab was equipped and stocked to quickly manufacture tens of thousands of fentanyl pills.

Agents found thousands of fentanyl pills packaged for sale in multiple five-gallon buckets, raw material to make thousands more pills, pill presses, a pill counting machine, pill dies, and fentanyl powder. Defendant's fingerprints were found on five bags containing controlled substances in the pill lab. Defendant's fingerprints were the only fingerprints identified on any items within the pill lab. Additionally, at the Everett residence, agents found a maroon Chevrolet Tahoe registered to Defendant. Inside the Tahoe, agents found mail belonging to Defendant, a photograph of Defendant with other conspirators, and an American Airlines boarding pass for a flight taken by Calvin Williams Jr.

At the close of the Government's case-in-chief and again at the close of the evidence, pursuant to Fed. R. Crim. P. 29, Defendant moved for judgment of acquittal. The Court denied the motion. The jury trial concluded on July 14, 2025, after the jury returned a verdict of guilty as to each Count. Defendant now renews his Rule 29 motion. Defendant also moves for a new trial under Rule 33. The Court will address each motion in turn.

## II.    Analysis

### A.    Rule 29 Motion

Fed. R. Crim. P. 29 allows a Defendant to move the court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[1] When reviewing the sufficiency of evidence to sustain a guilty verdict, the Court must "ask whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[2] The Court may consider all direct

---

[1] Fed. R. Crim. P. 29(a).

[2] *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)).

and circumstantial evidence admitted at trial[3] as well as "all reasonable inferences to be drawn

therefrom."[4] Substantial evidence must support the conviction, but "it need not conclusively

exclude every other reasonable hypothesis and it need not negate all possibilities except guilt."[5]

Furthermore, the Court cannot cast aspersions on the credibility of witnesses or weigh conflicting

evidence, because "these matters are within the exclusive province of the jury."[6]

     Defendant makes a general sufficiency-of-the-evidence argument against all Counts as

well as several specific arguments. The Court will address Defendant's specific arguments in turn.

    1.    *Conspiracy to Possess Fentanyl and Methamphetamine with the Intent to Distribute*

     Defendant challenges whether the Government proved that he knowingly and voluntarily

joined a drug conspiracy. On these Counts (Counts 1 and 2), the Court instructed the jury that the

elements of these offenses were:

> <u>First</u>: two or more persons agreed to violate the federal drug laws by possessing with intent to distribute the controlled substance charged in the Second Superseding Indictment;

> <u>Second</u>: the defendant knew the essential objective of the conspiracy;

> <u>Third</u>: the defendant knowingly and voluntarily involved himself in the conspiracy; and

> <u>Fourth</u>: there was interdependence among the members of the conspiracy.

> <u>Fifth</u>: the overall scope of the conspiracy involved:
>     a.    at least 400 grams of Fentanyl as to Count 1
>     b.    at least 500 grams of Methamphetamine as to Count 2

Defendant takes issue with the sufficiency of the Government's evidence as it relates to

---

[3] *See United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006).

[4] *United States v. Wacker*, 72 F.3d 1453, 1462 (10th Cir. 1995) (citations omitted).

[5] *United States v. Vallejos*, 421 F.3d 1119, 1122 (10th Cir. 2005) (citation omitted).

[6] *Magallanez*, 408 F.3d at 682 (citations omitted) ("The jury apparently believed the witnesses, and that is the end of the matter.").

elements one through four.

a.    Agreement

Defendant asserts that the Government's evidence to prove an agreement amongst Defendant and the other conspirators showed mere association rather than the existence of an agreement. On this element, the Court instructed the jury that:

> the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan. The agreement necessary for a conspiracy need not be explicit but may be inferred from the circumstances. The government may prove a drug conspiracy entirely with circumstantial evidence.

Defendant asserts that none of the factors that a jury or reviewing court may consider regarding the existence of an agreement support the inference of a conspiracy. Those non-exclusive factors include: (1) presence at the crime scene; (2) association with co-conspirators; (3) evidence of conflicting stories; (4) active attempts to divert officers' attention; (5) participation in drug transactions; or (6) knowledge of and control over drugs.[7]

Upon review, the Court finds that four of the six factors favor the existence of an agreement. First, the Government provided video evidence showing Defendant at the Casado address. Further, the fact that a vehicle registered to Defendant and his fingerprints were discovered at the Everett address could be viewed as evidence that Defendant was present there at some point. Second, the Government offered ample evidence that Defendant was friends with and associated with Calvin Williams Jr. and Harold Hawkins, other conspirators in the manufacturing and distribution operation. The third and fourth factors do not weigh in favor of the existence of an agreement: there is no evidence of conflicting stories or attempts to divert officers' attention. Fifth, Defendant's fingerprints on baggies containing fentanyl pills packaged for sale at both

---

[7] *United States v. Delgado-Uribe*, 363 F.3d 1077, 1083 (10th Cir. 2004).

locations can lead to the inference that Defendant was an upstream participant in drug transactions. And lastly, the fact that his fingerprints were found on several baggies containing drugs supports the inference that Defendant had knowledge of and control over the drugs at some point. As such, the evidence supports an inference that Defendant was an integral part of the agreement amongst the conspirators to manufacture, possess, and distribute fentanyl and methamphetamine.

      b.      Knowledge of Essential Elements and Voluntary Participation

Defendant next challenges whether the evidence sufficiently demonstrated that he knew of and voluntarily participated in the drug conspiracy. The Court instructed the jury that if it believed a conspiracy existed, they must determine:

> whether the defendant knew at least the essential objective of the conspiracy and voluntarily chose to be part of it. The law does not require proof that the defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out. A person may belong to a conspiracy for a brief period of time or play a minor role. On the other hand, proof is not sufficient if it merely shows that the defendant knew about the existence of the conspiracy or was associated with members of the conspiracy. Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

Defendant argues that the record is devoid of evidence demonstrating that he knew anything about the presence or distribution of methamphetamine or fentanyl. Defendant argues that because some of the baggies that the Government's fingerprint analyst received were empty when she received them, there is no way to determine that the baggies on which Defendant's fingerprints were found in fact contained drugs. But agents who executed the search warrant testified that the baggies did contain drugs when they were found, and the drugs were removed for testing and safety. Additionally, the fingerprint analyst testified that there were drugs in at least one baggie at the time she examined and identified Defendant's fingerprints.[8]

---

[8] Tr. Vol. III at pp. 108–09.

Defendant rightly notes that the Government presented no witness testimony that he participated in the conspiracy and that there was no evidence of communications that would link him to the conspiracy. He also points out that his fingerprints are undated and context-free. Defendant asserts that, without a date or any other context for how the fingerprints came to be on these items, it is improper to draw any inference about his knowledge or participation in the conspiracy. But even without a date, context, or communications related to his participation in the conspiracy, a natural logical inference from the fact that Defendant's fingerprints were found at two separate locations on baggies and equipment used to package enormous amounts of fentanyl and methamphetamine is that he was an active participant in packaging the drugs for later sale. This inference leads to the conclusion that Defendant knowingly joined the conspiracy and acted to advance its purposes.

c.    Interdependence

Defendant challenges the evidence showing that there was interdependence among him and the other conspirators. The Court instructed the jury that to find interdependence, the jury must conclude that:

> the members intended to act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward the realization of that purpose.

Defendant argues that there was no evidence that he shared logistics or resources with other conspirators or that he had a role or was a trusted agent in the conspiracy. But, once again, it is reasonable to infer from the fingerprint evidence found at both locations that Defendant was an integral part of the conspiracy through the packaging of drugs for sale.

d.    Conclusion Regarding Conspiracy Counts

In sum, after reviewing the challenged elements of the conspiracy charges, the Court finds that this is not a situation in which the Government has sought to prove "a conspiracy by presenting evidence that only places the defendant in 'a climate of activity that reeks of something foul.'"[9] Rather, the evidence supports the conclusion that Defendant was near the center of the conspiracy to manufacture and package methamphetamine and fentanyl for distribution.

2.    *Possession Charges*

Defendant makes a broad argument related to the Government's fingerprint evidence used to prove all of the possession charges (Counts 27, 29–32, and 34). Additionally, he makes some arguments specific to the possession of drugs and possession of firearms charges. The Court will address Defendant's broad argument related to the fingerprint evidence and then turn to Defendant's challenges to the specific Counts.

a.    Use of Fingerprint Evidence to Prove Possession

Defendant draws parallels between *United States v. Townley*[10] and the present case to advance his broad argument against the possession convictions. There, the defendant was arrested after his fingerprints were found on tape that was wrapped around a brick of cocaine.[11] The brick was found in a safe in an apartment belonging to another co-defendant; law enforcement also found cocaine in the defendant's brother's apartment.[12] The court reasoned that because the only substantial evidence connecting the defendant to the cocaine was the fingerprint evidence, there

---

[9] *United States v. Austin*, 786 F.2d 986, 988 (10th Cir. 1986) (citation omitted).

[10] 942 F.2d 1324 (8th Cir. 1991).

[11] *Id.* at 1325.

[12] *Id.*

was insufficient evidence to find that the defendant possessed the cocaine.[13] The court arrived at this conclusion in part because the fingerprint evidence only showed that the defendant handled the tape—not the cocaine—and that his handling of the tape could have occurred a long time before the discovery of the cocaine brick in the apartment.[14]

Here, Defendant argues that because his fingerprints cannot be dated and are devoid of context, they cannot be used to prove that he possessed the drugs or firearms on the relevant date. Rather, he asserts that the fingerprints only show that at some point Defendant touched the items on which his fingerprints were found.

But unlike *Townley* where there was very little connection between the defendant and the apartment at which the cocaine was found, here Defendant was tied to both locations at which contraband was found. First, he was observed at Casado at least five times in the few days prior to the execution of the search warrants. And on one of these occasions, Defendant was observed entering the garage that housed the safe filled with the drugs and firearms. Second, a vehicle registered to Defendant was found at Everett. Finally, Defendant's fingerprints were not found on just one item. Rather, Defendant's fingerprints were found on 47 exhibits. Naturally, there is an inverse relationship between the number of times his fingerprints were found on items and the likelihood that those fingerprints accidentally or incidentally arrived on those items. As such, the factual circumstances in this case are sufficiently distinct from *Townley* such that it does not offer a useful comparison. Accordingly, the Court does not find persuasive Defendant's broad argument challenging the Government's reliance on the fingerprint evidence to prove possession.

---

[13] *Id.* at 1326–27.

[14] *Id.* at 1326.

b.    Possession of Methamphetamine and Fentanyl

Specific to his drug possession charges, Defendant argues that because Casado and Everett were places of joint occupancy, "there must also be proof of 'some connection or nexus between the defendant and' the contraband. Such a nexus is shown where the evidence 'plausibly supports the inference that the defendant had knowledge of and access to' the contraband."[15] Citing this proposition, Defendant asserts that the Government only showed his presence, proximity to, and association with others who controlled these locations. He argues that there was no nexus between him and the contraband because several other individuals had access to and stronger connections to these locations. He makes arguments specific to each location which the Court will address in turn.

Regarding the Casado residence, Defendant points out that the safe was locked when agents executed the search warrant and that the Government did not present any evidence that Defendant did or could have unlocked the safe to access its contents. Accordingly, Defendant argues that the Government could not establish that Defendant possessed the contents of the safe on the date the search warrant was executed. But the Second Superseding Indictment charged that Defendant possessed these items "on or about" October 18, 2022. The fact that Defendant was observed in the same garage as the safe containing the drugs just a few days prior to their discovery is sufficiently close in time to support the inference that Defendant possessed the drugs "on or about" October 18, 2022.[16] Further, Defendant simultaneously argues that (1) the only evidence linking him to the drugs was the fingerprint evidence and (2) the fact that he was observed at the Casado residence just days before the search shows mere presence. But Defendant appears to divorce these

---

[15] *United States v. Ibarra-Diaz*, 805 F.3d 908, 932 (10th Cir. 2015) (citations omitted).

[16] *See Real v. Shannon*, 600 F.3d 302, 308 (10th Cir. 2010) (holding that evidence that an offense occurred within a month of the specific "on or about" date in the indictment was reasonably near enough in time so as not to prejudice the defendant).

-11-

two pieces of evidence from one another. When they are viewed together, they are sturdy enough to support an inference that he had knowledge of and access to the drugs found in the Casado residence on or about the charged date.

Next, Defendant argues that the Government did not sufficiently connect him to the drugs found at the Everett address. He argues that the only evidence tying him to the drugs found at Everett were his fingerprints on baggies containing drugs. He argues that to conclude that he possessed the drugs found at Everett requires impermissible inference stacking. To support his inference-stacking argument, Defendant rightly points out that the Government presented no evidence that he was observed at Everett. However, Defendant overlooks the fact that a maroon Chevrolet Tahoe registered to him and containing mail belonging to him was located there. This is some evidence that he was associated with the Everett address.

But even if the Tahoe was not located at the Everett address, Defendant seems to argue that the inculpatory fingerprint evidence at the Everett address should be viewed in isolation. This cannot be. The Government offered evidence connecting Everett and Casado as places associated with the drug distribution operation of the unique yellow fentanyl pills. The Tahoe, the unique yellow pills at both locations, the fact that Defendant's fingerprints were the only fingerprints identified on any items within the pill lab, and the fact that his fingerprints were found on baggies filled with fentanyl pills at the Everett location is strong circumstantial evidence that Defendant had knowledge of and control over the drugs at Everett on or about the charged date.

Finally, Defendant argues that, because his fingerprints were found on items that are common for household use—like baggies—there can be no inference that Defendant possessed the drugs that may have been placed in those baggies after he handled them. Recall that the evidence "need not conclusively exclude every other reasonable hypothesis and it need not negate

all possibilities except guilt."[17] Moreover, Defendant's fingerprints were located on several items that cut against a purely innocent explanation. Defendant's fingerprints were located on baggies, buckets, a box with drug packaging materials, and a pill tray, all collocated with an enormous quantity of drugs (and many packaged for sale). Further, his fingerprints were found at both the storage location and the manufacturing location of this operation. A natural inference from these facts is that Defendant was involved in the operation to manufacture and package the drugs. The inference that Defendant was involved in packaging drugs demands the conclusion that Defendant had control over these substances while manufacturing or packaging them. Accordingly, the Court finds that the Government's evidence readily supports that Defendant had control over the drugs at both locations on or about the charged dates.

c.    Possession of Firearms and Ammunition

Specific to his firearms and ammunition possession charges, Defendant challenges the possession element common to each of these offenses. He mounts his challenge by pointing out that the Government did not present evidence of actual possession but rather relied on a theory of constructive possession. He argues that it takes several improper inferences to conclude that he had constructive possession of the firearms and ammunition.

The evidence supports the conclusion that Defendant constructively possessed the ammunition and firearms. Defendant's fingerprint was found on a drum magazine that was loaded with .40 caliber ammunition. This drum magazine was found in a satchel in the safe at the Casado residence. Also within that same satchel was a loaded Glock .40 caliber semi-automatic pistol. There were three other firearms found inside the safe.

---

[17] *Vallejos*, 421 F.3d at 1122.

Defendant notes that the Government did not present evidence that he had the ability to open the safe. But as with his argument related to the possession of drugs convictions, Defendant was observed in the garage just days before the firearms and ammunition were discovered. Moreover, Defendant's fingerprint was found on the drum magazine along with his fingerprints on several other items within the safe. These facts are sufficient to give rise to the inference that he had knowledge of and control over these objects.[18]

## B.    Rule 33 Motion

Fed. R. Crim. P. 33 allows a Defendant to move the court to "vacate any judgment and grant a new trial if the interest of justice so requires."[19] "In deciding a motion for new trial, the court may weigh the evidence and consider the credibility of witnesses in determining whether the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred."[20] Granting a motion for new trial on this ground is a power that should be "invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."[21]

Defendant challenges the sufficiency of the evidence related to all Counts under Rule 33. He presents essentially the same arguments as in his Rule 29 Motion. But he asks the Court to arrive at a different conclusion under the Rule 33 standard because, here, the Court must view the evidence in light of fairness and justice rather than in the light most favorable to the Government.[22] But for the reasons stated above, the Court finds that the jury verdict was not contrary to the weight

---

[18] *United States v. Smith*, 997 F.3d 215, 220 n.7 (5th Cir. 2021) (noting "that the presence of a defendant's fingerprints on contraband can support the conclusion that the defendant possessed the item if the prints suggest some degree of control").

[19] Fed. R. Crim. P. 33(a).

[20] *United States v. Evans,* 42 F.3d 586, 593 (10th Cir. 1994) (alterations and citation omitted).

[21] *Id.*

[22] *United States v. Lopez*, 576 F.2d 840, 845 n.1 (10th Cir. 1978) (noting that the trial court in reviewing a Rule 33 motion "does not view the evidence in the light most favorable to the government as he would in ruling on a Rule 29 acquittal motion").

of the evidence or that it constituted a miscarriage of justice. The Court will next address Defendant's specific arguments contained in his Rule 33 motion.

First, Defendant challenges the Government's reliance on the testimony of a fingerprint analyst. He argues that her report suffered from clerical errors and that her testimony lacked credibility. On cross-examination, Defendant elicited that the fingerprint examiner mislabeled one of the identified fingerprints in her report. She labeled one print as Defendant's left thumb when in fact it was Defendant's left middle finger. She admitted that she was unaware of this mistake until cross-examination. Further, Defendant points out that she admitted to several other clerical errors in her report. But the mislabeled fingerprint did not affect the analyst's findings or opinions. Rather, she testified that she was confident her report was accurate despite the mislabeling and clerical errors. Both the Government and Defendant's counsel elicited the fact of this mislabeling during her testimony.

The Court finds that, at most, the mislabeling only affected one of the 47 exhibits on which Defendant's fingerprints were found. Further, the nature of the mislabeling does not impact the identity of the Defendant as the owner of the fingerprint. As such, the Court does not find that the fingerprint analyst's report or testimony lacked credibility such that the trial suffered a miscarriage of justice through the Government's reliance on her testimony.

Finally, Defendant makes a *Youngblood*-esque argument[23] related to the Government's decision not to collect fingerprints from some items and for choosing not to conduct any DNA analysis. Under *Arizona v. Youngblood*, Due Process is violated when the Government fails to preserve potentially useful evidence in bad faith.[24]

---

[23] 488 U.S. 51 (1988).

[24] *Id.* at 58.

Defendant contends that the Government failed to collect more fingerprint samples on items in the safe, did not test enough items that were found in the pill lab, and that there was no DNA analysis conducted on any items. He argues that the Government's failure to do these additional forensic analyses amounts to a miscarriage of justice because it inflated the probative value of the collected fingerprints, prevented the defense from challenging the credibility of the Government's theory, and resulted in a verdict unworthy of confidence because of the lack of additional evidence these tests may have produced. Defendant does not assert that the Government acted in bad faith in deciding not to conduct these additional tests. Rather, he argues that he should not be required to show bad faith in the Rule 33 context.

But the Court does not find Defendant's argument persuasive. First, Defendant cites no caselaw to support this proposition that the *Youngblood* standard should be altered in the Rule 33 context. Further, Defendant had the opportunity to challenge the fingerprint evidence and the credibility of the Government's theory through cross-examination and through an opportunity to present his own evidence. And, even in *Youngblood*, the Supreme Court was careful to note that it "strongly disagree[d]" with the proposition that police should be required to use particular investigatory tools.[25] As such, the Court does not find that the lack of DNA or additional fingerprint evidence amounted to an injustice requiring a new trial.

Finally, Defendant argues that, cumulatively, the concerns he identifies in his Rule 33 motion amount to prejudice such that a new trial is warranted. However, for the reasons described above, Defendant's trial was not plagued by errors or deficiencies that impact fairness or justice.

---

[25] *Id.* at 59.

-16-

The Court finds that this is not an "exceptional case[] in which the evidence preponderates heavily against the verdict."[26]

      **IT IS THEREFORE ORDERED** that Defendant's Renewed Motion for Judgment of Acquittal under Fed. R. Crim. P. 29, or in the Alternative, for a New Trial under Fed. R. Crim. P. 33 (Doc. 387) is **DENIED**.

      **IT IS SO ORDERED.**

Dated this 12th day of February, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[26] *Evans*, 42 F.3d at 593.